Sun Oil Company, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 1, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MACPHAIL, sitting as a panel of three.

*Edward J. Carney, Jr.,* with him *Donald T. Petrosa,* and *Petrikin, Wellman, Damico & Carney,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Assistant Attorney General, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., December 13, 1979:

Sun Oil Company on appeal disputes an order of our Unemployment Compensation Board of Review which granted benefits to Nicholas Bagley, III. The Board had rejected Sun's argument that Bagley was ineligible for benefits because of willful misconduct.[1] We affirm.

The Bureau of Employment Security[2] denied Bagley benefits due to willful misconduct. A referee also denied benefits, finding that he had been fired for fighting with another employee after having struck the first blow. The referee concluded that his discharge was the natural consequence of fighting on company property and that that was an obvious breach of a duty owed to the employer and was inimical to the employer's best interests. On further appeal, the Board found that claimant acted in self-defense and that "the altercation was provoked by the

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

[2] The Bureau of Employment Security has been renamed the Office of Employment Security.

fellow employee who made threatening gestures to the claimant and used several racial epithets.''

Bagley, following orders, refused to give a paycheck to a subordinate. On December 22, 1977, Bagley was confronted and in an ensuing altercation punched the fellow employee. Bagley testified:

He came into the station, and his buddy had a stick. And he had something in his pocket, that he kept reaching for . . . as he approached me, he began to go into his back pocket, telling me that he wanted his check. And if I didn't give it to him, that he was going to kill me. And he called me a nigger. And he called me several other names. At that time the fight broke out. At that time, I grabbed him. I beat him up. I hit him. And I had the manager at the station call the police.

The station manager who witnessed the event testified that Bagley was subjected to racial slurs and obscenities. Bagley also testified that prior to the incident, he had been threatened in a telephone call by the employee who said he would "come down and beat me up'' if the check was withheld. Following a written report of the incident, Bagley was requested to appear at his supervisor's office and was discharged for violating company policy.

In an unemployment compensation case, this Court's review is limited to questions of law and, in the absence of fraud, to a determination of whether the Board's findings are supported by competent evidence, and whether the conduct of the charged employee constituted willful misconduct. *Gardner v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 548, 372 A.2d 38 (1977). Since the employer has the burden of proving willful misconduct and has not prevailed before the Board, our scope of review is limited to a determination of whether the

24

Board's findings of fact can be sustained absent a capricious disregard of competent evidence.[3] *Houff Transfer, Inc. v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979).

It is settled law that language, however abusive or even personally offensive, does not justify an assault and battery. *Sorge v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 282, 370 A.2d 818 (1977).[4] The Board here was satisfied that Bagley was confronted by a fellow employee who combined verbal harassment with "threatening gestures." This was the basis upon which the Board concluded that Bagley's conduct was provoked and that he was acting in self-defense. It was entirely proper for the Board to have accorded weight to Bagley's testimony that, considering the sensitivity of the language directed at him coupled with the gesture toward an unseen device and prior threats, he feared an imminent attack on his person. A reasonable belief of imminent bodily harm and feared danger of an assault justifies reasonable retaliatory force.[5]

---

[3] We have defined "capricious disregard of evidence" as a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching the result. *Stevens v. Unemployment Compensation Board of Review*, 44 Pa. Commonwealth Ct. 242, 403 A.2d 221 (1979).

[4] The prevailing rule of law is set forth in 6A C.J.S. *Assault & Battery* §18 (1975) : "[N]o provocative acts, conduct, former insults, threats, or words, *if unaccompanied by any overt act of hostility*, will justify an assault, no matter how offensive or exasperating, nor how much they may be calculated to excite or irritate." (Emphasis added.)

[5] In accord with the result reached here are cases with similar factual matrices from other jurisdictions. *See Landry v. Hill*, La. App.    , 94 So.2d 308 (1957) ; *Godwin v. Collins*, 67 Fla. 197, 64 So. 752 (1914) ; *Keep v. Quallman*, 68 Wisc. 451, 32 N.W. 233 (1887).

The Board is charged with evaluating credibility and competency of testimony before it and its findings are to be accorded great weight. We find nothing in the record which leads us to conclude that the Board erred by capriciously disregarding competent evidence.

Accordingly, we

### ORDER

AND Now, this 13th day of December, 1979, the order of the Unemployment Compensation Board of Review dated October 23, 1978, is hereby affirmed.